## Commonwealth, Appellant, *v.* Zasloff.

Argued April 28, 1939.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*Louis L. Kaufman,* with him *Andrew T. Park,* District Attorney, for appellant.

*Ben Paul Brasley,* of *Brasley, Rubin, Balter & Cole,* with him *Alexander I. Shaw,* and *David D. Blumenstein,* for appellee.

OPINION BY HIRT, J., October 10, 1939:

In this case the defendant, a retailer, was charged with violations of the so-called Fair Sales Act of July 1, 1937, P. L. 2672, specifically, that on three occasions he sold merchandise at less than the cost thereof to him. This appeal followed the order of court quashing the indictment and involves the question of the constitutionality of the act as an exercise of the police power of the State. Section 3 of the act provides: "Any retailer who shall advertise, offer to sell, or sell at retail, any merchandise at less than cost to the retailer, as defined in this act ...... shall be guilty of a misdemeanor ......"

On the general principles involved, there can be little

difference of opinion. We agree with appellant that the right to invoke the police power varies with time and conditions. "Certainly there is nothing fixed and static about the industries or businesses which may be regulated in the public interest, in the exercise of the police power of the State. As conditions change the right of regulation may be enlarged, so as to embrace other industries, or narrowed so as to take away the right of regulation previously exercised": *Rohrer v. Milk Control Board,* 322 Pa. 257, 186 A. 336. And periods of economic depression particularly are fertile times for the growth of trade practices which affect the well-being of the community. Normally the use of property and its disposition and sale are matters of private and not public concern. "The general rule is that both shall be free of governmental interference. But neither property rights nor contract rights are absolute; for government cannot exist if the citizen may at will use his property to the detriment of his fellows, or exercise his freedom of contract to work them harm." The enactment of proper legislation to insure fair trade practices is undoubtedly within the police power of the State. Upon proper occasion and by appropriate measures the State may regulate a business in any of its aspects. If the legislative policy be to curb unrestrained and harmful competition by measures which are not arbitrary or discriminatory it does not lie with the courts to determine that the rule is unwise. *Nebbia v. New York,* 291 U. S. 502, 54 S. Ct. 505; *Paramount Pictures v. Langer,* 23 F. supp. 890. But "a state may not, under the guise of protecting the public, arbitrarily interfere with private business or prohibit lawful occupations or impose unreasonable and unnecessary restrictions upon them": *Burns Baking Co. v. Bryan,* 264 U. S. 504, 44 S. Ct. 412. The Legislature is primarily the judge of the necessity of the law, but its determination of what constitutes a proper exercise of its police power is not final and conclusive, but is subject to supervision by the courts, and

the question in each case is whether the Legislature has adopted a statute in excess of reasonable discretion: *Paramount Pictures v. Langer,* supra.

We are convinced that the act in question offends against the due process clause of the constitution in that its scope is not sufficiently limited. The act is entitled, "An Act to insure and protect fair trade practices in distribution ......" The body of the act is silent on the subject of its purpose. It is contended by appellant that by its terms it is made to apply only to improper sales by Section 5 of the act and that every transaction not within the exception is an unfair trade practice. That section excludes specific transactions in the following terms: "The provisions of this act shall not apply to sales at retail or sales at wholesale—(a) where merchandise is sold in bona fide clearance sales, and is advertised, marked, and sold as such; (b) where perishable merchandise must be promptly sold in order to forestall loss; (c) where merchandise is imperfect, or damaged, or is being discontinued, and is advertised, marked, and sold as such; (d) where merchandise is sold upon the final liquidation of any business; (e) where merchandise is sold for charitable purposes; (f) where the price of merchandise is made to meet the legal price of a competitor for merchandise of the same grade, quality, and quantity; and (g) where merchandise is sold by any officer acting under the direction of any court."

Except in its title, the act does not assert a policy to prohibit the practices which the Commonwealth contends is within its purpose. To sustain it as a constitutional exercise of police power, therefore, we must find that the prohibited acts bear a true relation to the protection of fair trade practices in distribution without imposing unreasonable and unnecessary restrictions. We are unable to agree that the relationship in that sense exists. It is not difficult to imagine many innocent transactions which do not come within any of the excepted classes of Section 5, sales, which

though below cost, neither affect competition nor otherwise offend against public interest.   The act in its operation in practice certainly would develop many harmless transactions under circumstances which cannot now be foreseen.   The statement of the exceptions of paragraph 5 in a sense is academic, and experience demonstrates that actions at law involving the same subject matter fail to conform to any definite pattern. The act therefore, to paraphrase the language of *Tyson & Bro. v. Banton,* 273 U. S. 418, 47 S. Ct. 426, spreads an all-inclusive net for the feet of everybody save those within exceptions, upon the chance that while some innocent will surely be entangled in its meshes, wrongdoers also may be caught.

It is our function to inquire into the real effect of the statute because of the challenge of interference with the right of contract, and this inquiry convinces us that the act as drawn is too broad in its application and prevents innocent transactions regardless of motive, and in this respect is unreasonable: *Fairmont Creamery Co. v. Minnesota,* 274 U. S. 1, 47 S. Ct. 506.   Intent need not be shown to support a conviction under a valid statute in the exercise of police power (*Com. v. Liberty Prod. Co.,* 84 Pa. Superior Ct. 473) but the absence of a provision limiting the forbidden acts to those committed with intent is a proper consideration on the subject of reasonable discretion of the Legislature.   Selling below cost is not an offense against the public except where it is done with the intent to injure competitors or to destroy competition: *Wholesale Tob. D. B. v. Nat'l Candy & T. Co.,* 82 Pac. 2d 3 (Cal.)   The failure of the act to limit its application to sales made with that intent or to sales which actually result in injury regardless of intent, stamps the act invalid in that it exceeds the limits of legislative discretion and therefore is without justification under the police power of the State. *Lief v. Packard-Bamberger & Co.,* 123 N. J. Law 95, 8 A. 2d 98.

Judgment affirmed.